THE HOUSTON & TEXAS CENTRAL RAILWAY COMPANY v. MARTIN STRYCHARSKI.

No. 483.

**1. Contributory Negligence not to Look and Listen.**—The evidence showing that plaintiff, by looking and listening, could have perceived the danger and avoided injury, he could not recover damages. See facts.

**2. Rules for Protection of Employes.**—All the risks which an employe may incur can not be guarded against by previous regulation. Against dangers open and patent to observation he must protect himself by the use of his own senses; and the servant may presume that a rule for his protection against dangers exists only in those cases where the master is required, in the exercise of due care, to have such a rule. When by the use of ordinary care he can see the danger, he can not presume that a rule exists by virtue of which he will be otherwise warned.

ERROR from Harris. Tried below before Hon. JAMES MASTERSON

*Baker, Botts & Baker* and *Lovett.* for plaintiffs in error.—1. There was no printed rule or regulation requiring any one to notify plaintiff or others in the same line of employment of the approach of any switch engine, yet the fact that there was no such printed rule, and the regulation established by uniform practice and long continued custom followed by plaintiff and those with whom he was working and did work in the performance of his duties, were well known to plaintiff, and he knew it was expected of him, and that it was his duty, to look out and watch at all times for the approach of the switch engine; and he accepted employment from the defendant, and continued in such employment for a long

time, with full knowledge of the fact that there was no such printed rule, and he was charged with the duty of looking out for the approach of the engine at all times under the circumstances in which he was situated at the time of his injuries; and he failed to look or listen for the approach of the switch engine, knowing at the time that it would return in a few moments, and therefore his injuries were caused by his own negligence. Railway v. Smith, 52 Texas, 185; Railway v. Bracken, 59 Texas, 74; Railway v. Richards, 59 Texas, 376; Railway v. Smith, 62 Texas, 252; Railway v. Hewitt, 67 Texas, 480; Hughs v. Railway, 67 Texas, 595; Railway v. Ryon, 70 Texas, 58; Artusy v. Railway, 73 Texas, 191; Railway v. McDonald, 75 Texas, 41; Railway v. Smith, 77 Texas, 179.

2. The failure upon the part of defendant to provide reasonable rules or regulations for the protection of its servants will not exonerate them from the exercise of reasonable care. If plaintiff was in a position where he could see and hear, it was his duty to look and listen. Railway v. Bradford, 66 Texas, 634; Rodgers v. Railway, 76 Texas, 505; Railway v. Hall, 78 Texas, 657.

*Goldthwaite, Ewing & Ring,* for defendant in error.—1. As a general rule, contributory negligence is a matter of defense, and must be pleaded, except where the circumstances are such as to develop from plaintiff's own testimony a suspicion of negligence on his part. Brown v. Sullivan, 71 Texas, 475; Railway v. Bennett, 76 Texas, 155; Railway v. Spicker, 61 Texas, 429.

2. Plaintiff claims that the judgment of the court below, so far as the merit of the case is concerned, should be affirmed on the following grounds:

(1) Plaintiff was not instructed to look out for the engine himself and to rely entirely upon himself for his own protection, and was not thereby or otherwise informed that no precaution would be taken by defendant to protect him from an accident of the character of the one which occurred.

(2) The fact that plaintiff could not with reasonable safety to himself have performed the duty of watering those cars within the time allowed for it without some provision being made for his protection, is evident.

(3) Plaintiff, who was a green hand at this particular work, had a right to suppose that precautions of the character above referred to had been taken for his protection. Railway v. Jones, 4 U. S. Ct. App., 115.

WILLIAMS, ASSOCIATE JUSTICE.—This is an appeal from a judgment in favor of appellee against appellant for damages for a personal injury received by the former while in the service of the latter, through its alleged negligence.

Stated briefly, but sufficiently for the purpose of the decision, the cir-

cumstances under which appellee was hurt were as follows: He was engaged in filling with water a tank in one of·a train of cars in the yard at Houston, and for this purpose was standing upon a ladder which leaned against the side of the car, holding a hose through which the water was running from a hydrant into the tank, at a hole in the roof of the car, when other cars were pushed up by the switch engine and coupled to the rear car of the train, with such force as to upset the ladder and throw him to the ground.

According to his testimony, he was bending forward over the roof of the car, looking into the tank so as to see when it should be full, and neither saw nor heard the other cars approaching. From this position, he states, he could not have seen nor heard the approach of the switch engine pushing the cars; but he also says that he neither looked nor listened. All of the other witnesses, both for plaintiff and defendant, testified, that standing as he stood on the ladder, he could, had he looked, have seen the cars coming; and most of them stated that had he listened he could have heard them. We understand him to mean that he could not see nor hear them as he leaned forward looking into the tank, and it seems apparent from the evidence that he could have seen them had he taken the precaution to look. There is no reason indicated by the evidence why he could not have done so. In filling the tank, he had only to hold the hose and let the water run. He could know when the tank was full without leaning forward to look into it, and if it overflowed no harm would have resulted, as it would simply have run out on the roof of the car. But conceding that it was proper for him to look into the tank, it required only a momentary glance, and was not necessary that he should continue looking so long as to allow the engine to come from the side track upon that where he was at work, and to approach and strike the train unseen by him. There was nothing in the work which he was doing which prevented him from looking for the approach of the cars, if it was otherwise required that in the exercise of proper care he should do so.

It had always been the custom, when that train arrived, to take out one of the cars and leave it on another track in the yard. This was done by uncoupling the car to be taken out from the one in front of it, and drawing it, along with those behind it, with the engine upon the side track. There it was uncoupled and left, and the remaining cars were brought back and recoupled to the train. This switching, as well as the filling of the tank with water and the cleaning out of the coaches, had all to be done in the twenty minutes during which the train remained at the depot. Appellee had known of this custom for several years, and had been engaged for at least a week in supplying the water and cleaning the cars while the switching was being done. On the night when he was hurt, he knew that the engine had taken out the cars and might be ex-

pected to come back to make the coupling. When the cars moved back, two switchmen rode upon the end of the coach which was nearest to appellee, with lights in their hands, and before they reached the standing cars to which the coupling was to be made, one of them descended to the ground and with his lantern gave signals to the engineer to slow up in order that the coupling might be made. The meaning of all such signals was known to appellee. In regard to these lights, one witness, it is true, says he saw none on the end of the coach, but whether he refers to the standing or the moving coach the record does not enlighten us. There was evidence as to the propriety of having lights on both. Admitting that he refers to the approaching section of the train, he does not say that he looked to see if there was a light, or that none was there. The specific and positive statements of the switchmen themselves are that they were there with their lights.

In order to fix the charge of negligence upon the defendant, and at the same time excuse himself for not seeing the cars coming, the plaintiff sought to show that proper care would have required of defendant the establishment and enforcement of a rule by which the coupling of the cars while he was engaged as he was would have been prevented, or else by which warning to him that it was about to be made would have been given; and that being ignorant of the absence of such a provision, he had the right to rely and did rely upon the assumption of its existence.

It is conceded that there is no rule which forbade the coupling of the cars as it was done, nor any which provided for warning to plaintiff. On the contrary, the work was done according to the habit of the defendant, and it was shown that employes doing the work in which he was engaged were expected to keep a lookout for themselves. It is equally certain that plaintiff knew that the coupling would be made without waiting for him to finish his work. It had been so performed before, and he had always gotten down from his ladder when notified that the cars were coming. Whether or not plaintiff knew that there was no provision for a warning to him, but was required to watch for himself, is a question about which there is a conflict of evidence. If he did know it, of course, in engaging to perform the work in the absence of a regulation, he assumed the risks to result from that condition. It will be assumed, however, in accordance with his evidence, that he supposed that he would be warned of the approach of the rear section of the train in time to get down from the ladder before the coupling was made, and that he also believed that there was a rule which required such notice to be given. Was he justified in so believing, and in failing to look for the return of the cars, which he knew must happen?

It is certainly the duty of railway companies to have suitable regulations for the doing of their business, which will give reasonable protection to their employes where the exposure is such that prudence requires.

it. But all risks which an employe incurs in the service can not be so provided against by previous regulation. There are some from which, by the use of his senses, he must protect himself. Such are those which are open and patent to his observation. Such was that from which appellee suffered. When the circumstances are such that the master is required, in the exercise of due care, to have a rule for the protection of the servant, the latter may presume that the rule exists until he ought to know the contrary; and he may rely on such presumption without being guilty of negligence, and may hold the master liable for any harm that results from the absence of the rule. But that there is no authority that we know of which exacts of the master the duty of cautioning the servant against a danger which the servant, while performing his work, may see and guard against as well as could the master himself if present, or any one else whom he might put to give the warning. The appellee says, that on other occasions, while he was doing his work, notice of the approach of the cars had always been given by some of the employes, and from this he presumed there was a rule which required this to be done. Had he been so situated or engaged that he might not have been reasonably expected to see the danger by use of the care which men of ordinary prudence would have employed, this might have been a reasonable presumption. Such were the cases of Hall, 78 Texas, 657; Hinzie, 82 Texas, 630; Williams, 75 Texas, 4, and others, in each of which the injured party was at work where he could not see the approach of danger. But here, if the defendant had made it the duty of some one to warn plaintiff, such person would have had no better opportunity to see when the cars came back than had plaintiff himself.

It is urged that defendant might have had signal lights upon the cars. upon which plaintiff was engaged, which would have prevented other employes from disturbing them. A conclusive answer to this is, that. plaintiff not only knew that no such precautions were taken, but knew also that the cars would be recoupled together as was done. He only claimed that he expected warning to be given to him before the coupling should be made.

As the evidence stands, it is apparent that plaintiff by simply using his eyes could have avoided the danger against which he had knowledge sufficient to put him on his guard. It was his duty to himself as well as to defendant to do so. No obligation which the law imposes upon the master relieves the servant of the duty, always resting upon men, to exercise those simple precautions for their own safety which common prudence dictates.

There is no conflict between the first and second special charges given at the request of defendant, and there was no error, at least against defendant, in giving them. Properly construed, we do not think the clause·

complained of in the third assignment of error was erroneous.    We will not, however, protract this opinion by analyzing it.

Because, under the evidence as it stands in the record, the verdict was not warranted, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered March 22, 1894.